WESTERN DISTRICT COURT: NEW YORK
UNITED STATES OF AMERICA

---

MARLON BARBER,
*Plaintiff,*

**COMPLAINT**

vs.

CITY OF BUFFALO and
CITY OF BUFFALO POLICE OFFICERS ZACK WYZYKOWSKI, CHARLES JONES, DET. RICHARD CRUZ, DET. RYAN CRESPO, DET. ANDREW WHITEFORD, and DET. WILLIAM REZABEK,
*Defendants.*

---

## Jury Demand

Trial by Jury on all issues is demanded.

## Preliminary Introduction

1. This is a combined state and federal civil action arising from constitutional and common-law violations suffered by Plaintiff Marlon Barber as a result of the Defendants' conduct beginning on or about June 10, 2025, including Plaintiff's unlawful arrest and seizure on July 18, 2025, and the subsequent initiation and continuation of criminal proceedings against him through their dismissal on or about November 19, 2025. Plaintiff brings claims under 42 U.S.C. § 1983 for violations of his rights under the Fourth, Sixth, and Fourteenth Amendments, including his rights to be free from unreasonable seizures, unlawful detention, and malicious prosecution. Plaintiff also asserts state common-law claims for false arrest and false imprisonment and seeks compensatory and punitive damages, costs, attorney's fees, and such other relief as the Court deems just and proper.

## Parties

2. Plaintiff, MARLON BARBER, currently resides and did reside at all times relevant to these proceedings at 66 Colton Avenue, Lackawanna, New York 14218, located within the County of Erie and the State of New York.

3. Upon information and belief, Defendant OFFICER ZACK WYZYKOWSKI is employed by the City of Buffalo Police Department and was acting in such capacity during the events which give rise to this lawsuit.

4. Upon information and belief, Defendant OFFICER CHARLES JONES is employed by the City of Buffalo Police Department and was acting in such capacity during the events which give rise to this lawsuit.

5. Upon information and belief, Defendant DETECTIVE RICHARD CRUZ is employed by the City of Buffalo Police Department and was acting in such capacity during the events which give rise to this lawsuit.

6. Upon information and belief, Defendant DETECTIVE RYAN CRESPO is employed by the City of Buffalo Police Department and was acting in such capacity during the events which give rise to this lawsuit.

7. Upon information and belief, Defendant DETECTIVE ANDREW WHITEFORD is employed by the City of Buffalo Police Department and was acting in such capacity during the events which give rise to this lawsuit.

8. Upon information and belief, Defendant DETECTIVE WILLIAM REZABEK is employed by the City of Buffalo Police Department and was acting in such capacity during the events which give rise to this lawsuit.

9. Upon information and belief, the CITY OF BUFFALO, is a municipal corporation duly organized and existing under and pursuant to the laws of the State of New York.

## **Jurisdiction**

10. Plaintiff brings this action to recover damages for the violation of his civil rights under the Fourth Amendment of the United States Constitution, codified at 42 U.S.C. § 1983 and as bestowed upon the states and its citizens through the Due Process Clause by the Fourteenth Amendment of the United States Constitution.

11. The Fourth Amendment also protects citizens from both an unlawful arrest as well as from a malicious prosecution subsequent to such an arrest.

12. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1332 (federal question), § 1343 (civil rights), and § 1367 (supplemental jurisdiction).

13. Declaratory, injunctive, and equitable relief is sought pursuant to 28 U.S.C. § 2201 and § 2202.

14. Compensatory and Punitive damages are sought pursuant to 42 U.S.C. § 1983, including but not limited to Plaintiff' lost wages, loss of consortium, and the loss of Plaintiff' liberty and freedom pursuant to the illegal and unlawful conduct of the Defendants.

15. Costs and Attorney's fees may be awarded pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. Rule 54.

16. As mandated by the Supremacy Clause, in relations to actions brought pursuant to 42 U.S.C. § 1983, Plaintiff does not have to comply with Municipal Law Section 50-e with regard to filing a Notice of Claim with regard to Federal Causes of Action.

17. Notwithstanding the same, Plaintiff did file a notice of claim on or about January 26, 2026. At least thirty days elapsed since the notice of claim was filed and before this complaint was filed; and in that time, the Defendants have neglected or refused to satisfy the claim." Coggins v. Cty. Of Nassau, 988 F. Supp. 2d 231, 251 (EDNY 2013).

18. At all times here mentioned, Defendants were acting under the color of state law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## Venue

19. This action properly lies within the Western District of New York, pursuant to 28 U.S.C. § 1343(3), because the claims arose in this judicial district and the Defendants reside in and/or do business in Erie County.

## Factual Background

20. Plaintiff, Marlon Barber, is a police officer employed by the City of Lackawanna Police Department.

21. On June 10, 2025, shortly before midnight, Plaintiff went to his brother's residence, located at 190 Newfield Street, in the City of Buffalo, after learning that his nephew, Vincent Arroyo, had been shot earlier that day.

22. Upon arriving at the residence, Plaintiff was approached by a Buffalo Police Department officer who inquired as to Plaintiff's presence. Plaintiff advised the officer that the

residence belonged to his brother, Marvin Barber. The officer left to verify this information and returned approximately ten (10) minutes later, granting Plaintiff permission to speak with his brother.

23. While Plaintiff was speaking with his brother outside the residence, they observed Buffalo Police Department officers entering the home. Plaintiff and his brother then entered the residence together with the officers' consent.

24. Once inside, Detective Richard Cruz requested that Plaintiff's brother wake his fiancée, Stephanie Arroyo, who was asleep in the home. When she did not awaken, Plaintiff asked Detective Cruz why it was necessary to wake her. Detective Cruz responded that officers believed a young man may have entered the residence with a firearm.

25. A verbal exchange followed between Detective Cruz and Plaintiff's brother, during which Plaintiff's brother objected to Detective Cruz's conduct and advised him that Plaintiff was a police officer with the City of Lackawanna. Detective Cruz acknowledged that all parties involved were law enforcement officers and therefore Plaintiff "knew the rules."

26. Detective Cruz then ordered Plaintiff and his brother to leave the residence and threatened them with arrest for obstruction if they did not comply. Plaintiff complied with these directives and exited the residence promptly and without resistance, as captured on interior security camera footage from the residence, attached hereto as ***Exhibit A.***

27. As Plaintiff was in the process of exiting the residence, Detective Cruz questioned Plaintiff's status as a police officer and demanded to see his badge. Plaintiff presented his badge for inspection. Detective Cruz then attempted to seize the badge, but Plaintiff refused, stating that Detective Cruz had only requested to see it, not take possession of it. Detective Cruz again attempted to take the badge, and Plaintiff again refused.

28. As a result, Detective Cruz repeatedly asserted that Plaintiff was not a police officer on the basis that he would not give the badge to him, but at the same time threatened to contact Plaintiff's boss. Plaintiff responded by asking what, specifically, Detective Cruz intended to communicate to his department and what conduct justified such action. Detective Cruz responded that Plaintiff was present at a crime scene and was not listening to officers in charge.

29. Detective Cruz then ordered Plaintiff to get off the porch and leave or "end up in cuffs," and stated, in substance, "Keep running your mouth, you get locked up...Lackawanna or not." Throughout this exchange, Plaintiff did not act aggressively or confrontationally and responded

primarily by stating "okay," while continuing to comply with orders to leave the area. This interaction is captured on the exterior security camera footage attached hereto as ***Exhibit B.***

30. Plaintiff then walked away from the residence and down the street, fully complying with all police directives. Detective Cruz exited the residence and instructed other officers to arrest Plaintiff if he returned. Plaintiff did not return.

31. Approximately thirty-eight (38) days later, on or about July 18, 2025, Plaintiff received a telephone call from Detective Ryan Crespo of the Buffalo Police Department, who asked Plaintiff to come to Buffalo Police Department headquarters to discuss shootings in the City of Buffalo. Plaintiff advised Detective Crespo that he did not know anything about any shootings in the City of Buffalo. Detective Crespo repeatedly stated that Defendants believed Plaintiff could assist them in identifying connections among certain shootings. Plaintiff ultimately agreed to meet with Detective Crespo at police headquarters.

32. Once at Buffalo Police Department headquarters, Plaintiff's cell phone was taken by Detective Richard Cruz, who stated that Plaintiff could not bring the phone into the interview room and took it from Plaintiff's hand. Defendants subsequently retained Plaintiff's cell phone for approximately six months without probable cause or a warrant.

33. After entering the interview room, Plaintiff was advised of his Miranda rights in the presence of Detectives Crespo and Cruz. Plaintiff invoked his constitutional right to counsel and declined to answer questions without an attorney present.

34. Immediately thereafter, Plaintiff was informed by Detective Crespo that he was being arrested and was then placed under arrest by Officer Zack Wyzykowski, along with assisting officers PO Charles Jones, Det. Andrew Whiteford, Det. Richard Cruz, and Det. William Rezabek, and was charged with obstructing governmental administration in the second degree, in violation of Penal Law (PL) §195.05, stemming from the June 10, 2025, incident.

35. Upon review of the criminal complaint and related charging documents, it became apparent that Detective Cruz made false and misleading statements, including allegations that Plaintiff acted aggressively and failed to promptly leave the residence. Those allegations are directly contradicted by the residence's interior and exterior security camera footage (***Exhibits A and B***), which captures the entire interaction, lasting approximately five (5) minutes, and shows Plaintiff complying with police orders and exiting the residence within seconds.

36. Despite the existence of this video evidence, Plaintiff was required to appear in Buffalo City Court and defend against the charge.

37. As a result of the arrest, Plaintiff was suspended from his employment as a police officer on or about July 18, 2025, causing significant professional and personal harm.

38. On or about November 19, 2025, after reviewing the available evidence, including the video footage, the District Attorney concluded that the case should not proceed to trial. The charges against Plaintiff were dismissed pursuant to CPL § 30.30 by Buffalo City Court Judge Tiffany Perry.

39. Upon information and belief, the incident herein described and the resultant injuries and damages sustained were caused as a result of the negligence, carelessness, reckless disregard and/or intentional and unlawful conduct on the part of the agents, servants and/or employees of the CITY OF BUFFALO and CITY OF BUFFALO POLICE OFFICERS ZACK WYZYKOWSKI, CHARLES JONES, DET. RICHARD CRUZ, DET. RYAN CRESPO, DET. ANDREW WHITEFORD, and DET. WILLIAM REZABEK.

40. Upon information and belief, as a result of the aforesaid incident, Plaintiff MARLON BARBER sustained emotional distress, reputational harm, financial losses, and other consequential damages, and continues to suffer ongoing harm.

**First Cause of Action for Violation of the Fourth Amendment as per 42 U.S.C. §1983 for Unreasonable Seizure, False Arrest, and False Imprisonment Against CITY OF BUFFALO POLICE OFFICERS ZACK WYZYKOWSKI, CHARLES JONES, DET. RICHARD CRUZ, DET. RYAN CRESPO, DET. ANDREW WHITEFORD, and DET. WILLIAM REZABEK, in their individual capacities.**

41. Plaintiff, Marlon Barber, repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

42. To maintain a claim for unlawful arrest, a plaintiff must establish: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. See, Bernard v. United States, 25 F. 3d 98, 102 (2d Cir. 1994).

43. In the present action, Plaintiff can make out all the elements of an unlawful arrest claim regarding the actions of the Defendants.

44. Defendants intentionally confined Plaintiff by placing him under arrest on or about July 18, 2025, and charging him with Obstructing Governmental Administration in the Second Degree, despite lacking probable cause to believe Plaintiff had committed any criminal offense.

45. Plaintiff was unquestionably conscious of the confinement, as he was advised of his Miranda rights, informed that he was under arrest, physically taken into custody by Defendant Officer Zack Wyzykowski with the assistance of Defendants Charles Jones, Detective Andrew Whiteford, Detective Richard Cruz, Detective William Rezabek, and Detective Ryan Crespo, and processed on criminal charges.

46. Plaintiff did not consent to the confinement in any manner.

47. The confinement was not otherwise privileged because Defendants lacked probable cause to arrest Plaintiff. The charge against Plaintiff arose from his interaction with Detective Cruz on June 10, 2025, during which Plaintiff fully complied with police directives. Plaintiff promptly exited the residence after being instructed to leave, did not physically interfere with the officers' investigation, did not obstruct any governmental function, and walked away from the scene without resistance or further incident.

48. The entirety of Plaintiff's interaction with Detective Cruz was captured on both the interior and exterior security camera systems at the residence. Those recordings conclusively demonstrate that Plaintiff complied with Detective Cruz's directives within seconds, was not physically aggressive, did not threaten any officer, and did not interfere with the investigation in any manner. The recordings directly contradict the allegations later made by Detective Cruz in support of the criminal charge.

49. Upon information and belief, Detective Cruz knowingly and intentionally made false and/or misleading statements in the criminal complaint and related charging documents by alleging that Plaintiff acted aggressively, refused lawful orders, and obstructed the investigation. Those allegations were directly contradicted by contemporaneous interior and exterior security camera recordings documenting the encounter.

50. Nevertheless, approximately thirty-eight (38) days later, Defendants arrested Plaintiff based upon Detective Cruz's false and/or misleading allegations. By personally participating in Plaintiff's arrest and seizure without probable cause, each Defendant directly caused and contributed to Plaintiff's unlawful confinement.

51. Although Plaintiff was criminally charged with Obstructing Governmental Administration in the Second Degree, the prosecution ultimately determined that the case should not proceed after reviewing the available evidence. The criminal charge was thereafter dismissed by Buffalo City Court. The dismissal further demonstrates the absence of probable cause supporting Plaintiff's arrest.

52. In connection with Plaintiff's arrest, Defendants also seized and retained Plaintiff's cellular telephone for approximately six (6) months without a warrant or other lawful justification, constituting an additional unreasonable seizure in violation of the Fourth Amendment.

53. Defendants' arrest of Plaintiff was undertaken in retaliation for Plaintiff questioning Detective Cruz's conduct during the June 10, 2025, encounter, identifying himself as a fellow police officer, refusing Detective Cruz's unlawful attempt to confiscate his police badge, invoking his constitutional right to counsel during questioning, and otherwise asserting his legal rights. Rather than serving any legitimate law enforcement purpose, Defendants' actions were intended to intimidate, punish, and retaliate against Plaintiff.

54. Such conduct, together with all of the facts alleged elsewhere in this Complaint, establishes that Defendants caused Plaintiff to be unlawfully seized, falsely arrested, falsely imprisoned, and subjected to an unreasonable seizure of his person and personal property in violation of the Fourth Amendment.

55. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered loss of liberty, loss of property, emotional distress, humiliation, reputational injury, suspension from his employment, financial loss, mental anguish, and other damages in an amount to be determined at trial.

56. Plaintiff demands costs and attorney's fees pursuant to 42 U.S.C. § 1988, together with such other and further relief as this Court deems just and proper.

**Second Cause of Action for the State Claim of False Arrest and False Imprisonment Against the CITY OF BUFFALO and CITY OF BUFFALO POLICE OFFICERS ZACK WYZYKOWSKI, CHARLES JONES, DET. RICHARD CRUZ, DET. RYAN CRESPO, DET. ANDREW WHITEFORD, and DET. WILLIAM REZABEK, in their official and individual capacities.**

57. Plaintiff, Marlon Barber, repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

58. The elements for a state claim for illegal arrest and imprisonment are identical to those of a federal claim in the second circuit.

59. Further and in this instance, (1) a notice of claim was served on or about February 6, 2026; (2) at least thirty days elapsed since the notice of claim was filed and before this complaint will be filed; and (3) in that time, the defendant neglected or refused to satisfy the claim." Coggins v. Cty. Of Nassau, 988 F. Supp. 2d 231, 251 (EDNY 2013).

**Third Cause of Action for violations of the Fourth, Sixth, and Fourteenth Amendments of the US. Constitution as per 42 U.S.C. § 1983 for Plaintiff's right to be free from malicious prosecution against the CITY OF BUFFALO POLICE OFFICERS ZACK WYZYKOWSKI, CHARLES JONES, DET. RICHARD CRUZ, DET. RYAN CRESPO, DET. ANDREW WHITEFORD, and DET. WILLIAM REZABEK, in their individual capacities.**

60. Plaintiff, Marlon Barber, repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

61. To prevail on a § 1983 claim for malicious prosecution, a Plaintiff must plead (1) the initiation or continuation of a criminal proceeding; (2) termination of the proceeding in his favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the Defendants' actions." Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997).

62. In the case at hand, Defendants initiated a criminal proceeding against Plaintiff by arresting and charging him with Obstructing Governmental Administration in the Second Degree, in violation of Penal Law § 195.05, arising from the June 10, 2025 incident.

63. To maintain a claim that Obstructing Governmental Administration in the Second Degree was committed an individual must either 1) intentionally obstruct, impair or pervert the administration of law or other governmental function or prevent or attempt to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act, or by means of interfering, whether or not physical force is involved, with radio, telephone, television or other telecommunications systems owned or operated by the state, or a county, city, town, village, fire district or emergency medical service or by means of releasing a dangerous animal under circumstances evincing the actor's intent that the animal obstruct governmental administration; or 2) with the intent to violate a closing order, order to seal, temporary

closing order, or temporary order to seal issued by a governmental entity to address a public health or safety concern, such person damages or removes any padlock or other device installed for the purpose of effectuating such order.

64. Here, Plaintiff's conduct did not satisfy either of the statutory alternatives set forth above and, accordingly, did not constitute Obstructing Governmental Administration in the Second Degree. Plaintiff did not intentionally obstruct, impair, or pervert the administration of law or any governmental function, nor did he prevent or attempt to prevent any public servant from performing an official function through intimidation, physical force, interference, or any independently unlawful act. To the contrary, Plaintiff complied with the officers' directives to leave the residence, exited the premises promptly, and continued walking away from the location without resistance. Thus, Defendants lacked probable cause to initiate or continue the criminal proceeding against Plaintiff.

65. Indeed, the lack of probable cause is further demonstrated by the fact that Plaintiff was not arrested at the scene, but rather was contacted approximately thirty-eight (38) days later by Det. Crespo and asked to come to the City of Buffalo police headquarters to discuss shootings occurring in the City of Buffalo. When Plaintiff explained that he did not know anything about any shootings in the City of Buffalo, Crespo repeatedly stated that Defendants believed Plaintiff could assist them in identifying connections between certain shootings. Plaintiff ultimately agreed to come to headquarters and speak with them. After Plaintiff appeared at the station and invoked his constitutional right to counsel, he was immediately placed under arrest for conduct that Defendants had personally witnessed weeks earlier.

66. Thus, the Defendants' decision to initiate the prosecution notwithstanding their personal knowledge of Plaintiff's conduct, the contemporaneous video evidence, and Plaintiff's compliance with their directives establishes that the criminal proceeding was instituted without the requisite probable cause.

67. Instead, such prosecution was commenced solely on account of the Defendant's frustration that Plaintiff invoked his Constitutional right to counsel and opted not to answer police questioning.

68. As the lack of probable cause to initiate these proceedings has been sufficiently pled, there is no need to independently plead malice. Malice can be inferred from the lack of probable cause. Cruz v. City of New York, No. 08 Civ. 8640 (LAP), 2010 WL 3020602, at (S.D.N.Y. July 27, 2010);

Bleiwas v. City of New York, No. 15 CIV. 10046 (ER), 2017 WL 3524679, at (S.D.N.Y. Aug. 15, 2017).

69. Plaintiff was required to appear in court on approximately five separate occasions in connection with this unlawful charge before it was dismissed on or about November 19, 2025.

70. Accordingly, Plaintiff suffered a sufficient post-arrest deprivation of liberty to trigger a different form of seizure than that of the arrest itself and thus, a malicious prosecution claim is warranted. Swartz v. Insogna, 704 F.3d 105 (2nd Circuit Court of Appeals, 2013).

71. As a direct and proximate result of Defendants' malicious prosecution, Plaintiff suffered a deprivation of liberty, was required to defend against criminal charges that lacked probable cause, and sustained substantial emotional, professional, reputational, and financial damages, including his suspension from employment as a police officer.

72. Plaintiff demands costs and attorney's fees pursuant to 42 U.S.C. § 1988, together with such other and further relief as this Court deems just and proper.

**Fourth Cause of Action for the State Claim of Malicious Prosecution Against the CITY OF BUFFALO and CITY OF BUFFALO POLICE OFFICERS ZACK WYZYKOWSKI, CHARLES JONES, DET. RICHARD CRUZ, DET. RYAN CRESPO, DET. ANDREW WHITEFORD, and DET. WILLIAM REZABEK, in their official and individual capacities.**

73. Plaintiff, Marlon Barber, repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

74. The elements of a state claim for malicious prosecution are identical to that of a federal claim in the second circuit.

75. Further and in this instance, (1) a notice of claim was served on or about February 6, 2026; (2) at least thirty days elapsed since the notice of claim was filed and before this complaint will be filed; and (3) in that time, the defendant neglected or refused to satisfy the claim." Coggins v. Cty. Of Nassau, 988 F. Supp. 2d 231, 251 (EDNY 2013).

**Punitive Damages against all Defendants aside from the City of Buffalo, in their individual Capacities**

76. Plaintiff incorporates by reference all of the allegations set forth herein in this Complaint as if fully set forth herein.

77. All Defendants, in their individual capacities, were deliberately indifferent to Plaintiff's Constitutional rights as a result of their unconscionable and unjustified arrest of said Plaintiff who was doing nothing even remotely improper or illegal, along with their false statements relative to his conduct.

78. Punitive damages are justified against the above-stated Defendants for their deliberate indifference and malice towards the Plaintiff herein.

WHEREFORE, the Plaintiff demands judgment on the above counts against the Defendants, their units, their officers, employees, against and other persons acting in concert or participation with them as stated above, and award the following amounts:

a. Compensatory damages in favor of the Plaintiffs in an amount to be determined by a jury;
b. Exemplary damages in favor of the Plaintiff;
c. Costs of this action, including reasonable attorney fees to the Plaintiff Pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, U.S.C. 1988 (1976); and
d. Such other relief as the court may deem appropriate.

DATED: October 5, 2026
Darien Center, New York

By: /s/ Matthew Albert, Esq.
The Law Offices of Matthew Albert Esq.
2166 Church Rd.
Darien Center, New York 14040
mattalbertlaw@gmail.com
Office: (716) 445-4119
Fax: (716) 608-1388